*82 OPINION.
TRUSsell:
The petitioner corporation, being the successor to and being controlled by the same stockholders as its predecessor the Grelck-Hovey Co. of Nebraska, and having taken over its predecessor’s assets for stock, can not, under the provisions of sections 326 and 331 of the Revenue Act of 1918, claim a larger invested capital on account of such assets than could have been claimed by the predecessor corporation.
*83 Concerning the matter of capital value of the license for the use of a patent acquired by the petitioner, the record contains evidence of value which falls into two classes — (1) the judgment of the men who produced patents and who were the owners of the corporation acquiring the license, and (2) the facts relating to a subsequent license agreement respecting the same patent. Neither of these classes of evidence can be rejected as having no probative value. Men having produced a patent and dealing with a corporation of which they are the owners may, not unnaturally, have entertained a too high opinion of its value, but in the transaction of a later license agreement respecting the same patent these same men were dealing with strangers to the property and with men who were about to pay cash for the rights acquired under a license agreement.
In 1923, when the basic patent still had approximately only 11 years to run and the subsequent related patent had approximately 12 years of life, Hunt undertook to pay $30,000 per year for the rights which he acquired under his license agreement. Applying well known formulae of reducing future payments to present value, it may be found that the capital value of the license agreement acquired by Hunt was approximately $200,000. And, while this agreement covered not only the basic patent in which the petitioner has an interest but also a later related patent, we believe the valuation here suggested for the Hunt license can be taken as furnishing the basis for estimating the value of the license obtained by the petitioner at an earlier date. And, considering all the facts disclosed by the record, especially the fact that when the petitioner obtained its rights the same were unlimited, although not exclusive, and that such rights had a period of more than 15 years of the remaining life of the patent, we have arrived at the conclusion that the license rights acquired by the petitioner and paid for by the issuance of stock had a value on June 28, 1917, of $30,000, and that the petitioner is entitled to have the same included in its invested capital at that value, subject to statutory limitations, and to the right to an annual deduction for the exhaustion of that capital value over the remaining life of the patent.
Concerning the property and plant acquired by the petitioner, it appears that said property cost the predecessor corporation $28,200 in cash disbursements plus the value of the services of Grelck rendered in connection with the construction and equipment of the three plants originally built. It appears from the record that these plants were constructed under the personal supervision of Grelck as an expert in the line of business to which the plants were to be dedicated; that in such construction the predecessor corporation by reason of the em *84 ployment of Grelck, saved construction costs equivalent to a contractor’s profit, which ordinarily is not less than 15 per cent of the cash cost of th'e construction. It also saved.architect’s fees for plans and superintendence, which for properties of the size and cost of the properties here under consideration may have been equal to not less than 10 per cent of cash disbursed in the erection of said plants. A contractor’s profit at the rate of 15 per cent would have amounted to $1,230 and an architect’s fees at 10 per cent would have been $2,820. It appears that it is for these things that the predecessor corporation issued $20,000 of its common capital stock. We are, therefore, of the opinion that these buildings and equipment should be included in invested capital at a total of $35,250, and that the petitioner may claim an annual exhaustion deduction upon that cost.
The $500 paid by petitioner in 1919 was advanced to the owners of the patent here in question to help defray litigation expenses. We regard this as in the nature of a loan and, in view of the fact that it was later repaid, we are of the opinion that it should not have been allowed as an expense deduction in the year 1919.
The deficiency may be redetermined in accordance with the foregoing findings of fact and opinion upon 15 days’ notice, pursuant to Rule 50, and judgment will be entered in due course.